IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION



FILED
APR 25 2019
Clerk, U.S Courts
District Of Montana
Missoula Division

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 15–11–M–DLC–JCL |
| Plaintiff-Appellee, | |
| vs. | ORDER |
| DAN CALVERT WALLEN, | |
| Defendant-Appellant. | |

On July 10, 2018, United States Magistrate Judge Jeremiah C. Lynch convicted Defendant Dan Calvert Wallen of three counts of unlawfully taking a threatened species in violation of the Endangered Species Act ("ESA") and the United States Fish and Wildlife Service's ("USFWS") special rule on the taking of grizzly bears. Wallen appeals this conviction.

This matter is before the Court on remand following the Ninth Circuit Court of Appeals' determination that the wrong standard was applied when previously deciding that Wallen did not act in self-defense. *United States v. Wallen*, 874 F.3d 620, 623 (9th Cir. 2017). In Wallen's previous trial, Judge Lynch determined, and this Court affirmed, that Wallen's "good faith belief" should be judged by an objectively reasonable standard. The Ninth Circuit overruled that determination,

-1-

finding that the appropriate "good faith" standard was the defendant's subjective state of mind at the time he committed the offense.

The sole issue for determination in this trial was if the government proved, beyond a reasonable doubt, that at the time of the offense Wallen subjectively believed, in "good faith," that his actions were necessary to protect himself, his family, or any other individual from bodily harm from a grizzly bear. 16 U.S.C. § 1540(b)(3). Judge Lynch concluded that Wallen did not have this requisite belief when he shot and killed three grizzly bears. Wallen's appeal asserts there was insufficient evidence to prove, beyond a reasonable doubt, that he lacked the subjective good faith belief.

Wallen's appeal also seeks to preserve his argument that his Fifth Amendment right to due process and Sixth Amendment right to an impartial factfinder were violated. These arguments were previously rejected by the Ninth Circuit on Wallen's appeal of his first conviction. In light of this procedural backdrop, the Court will not address these arguments further.

Federal Rule of Criminal Procedure 58(g)(2)(B) states "a defendant may appeal a magistrate judge's judgment of conviction or sentence to a district judge within 14 days of its entry." Judge Lynch had jurisdiction over this matter pursuant to 18 U.S.C. § 3231 and § 3401. This Court has jurisdiction over the

appeal of Judge Lynch's decision pursuant to 18 U.S.C. § 3231 and § 3402. On appeal, this Court considers questions of law de novo and factual determinations for clear error. *U.S. v. Ziskin*, 360 F.3d 934, 943 (9th Cir. 2003).

## I.  PROCEDURAL BACKGROUND

On December 23, 2014, Wallen was charged by information with violation of 16 U.S.C. § 1538(a)(1)(G), § 1540(b)(1), and 50 C.F.R. § 17.40(b)(1)(i)(A). A bench trial was conducted on March 10, 2015 by Judge Lynch, and Wallen was found guilty on all three counts on March 30, 2015. Judge Lynch sentenced Wallen to a $10 special assessment, a three-year term of probation with 60 days in a residential re-entry center, and $15,000 in restitution. Wallen appealed Judge Lynch's conviction and sentence to the undersigned. This Court affirmed the conviction. Wallen then appealed to the Ninth Circuit Court of Appeals. On October 25, 2017, the Ninth Circuit filed its opinion vacating Wallen's conviction and remanding the case for the factual determination of "whether Wallen held a subjective 'good faith belief that he was acting to protect himself [or] a member of his . . . family . . . from bodily harm' from grizzly bears." *Wallen*, 874 F.3d at 634 (quoting 16 U.S.C. § 1540(b)(3)).

Wallen's second bench trial was scheduled to begin on February 21, 2018 with Judge Lynch again presiding. However, the parties agreed to submit the case

-3-

to the Court on the factual record established at Wallen's 2015 trial. (Doc. 48 at 1–2.) Therefore, Judge Lynch's July 10, 2018 Findings of Fact and Conclusions of Law (Doc. 56), which are the subject of this appeal, are based upon the original trial record, the parties' briefs, and Judge Lynch's contemporaneous impressions of the witnesses at trial. On August 15, 2018, Judge Lynch sentenced Wallen to pay a $10 special assessment and $25,000 in restitution as well as serve a three-year term of unsupervised probation.

## II. BACKGROUND

All parties agree that the three adolescent grizzly bears that Wallen shot were known problem bears, which had become habituated to human food sources and had been frequenting the Ferndale area near Bigfork, Montana between April 2014 and May 2014. Montana's Department of Fish, Wildlife and Parks ("FWP") was aware of these bears' extensive activity in the area prior to May 27, 2014, the day Wallen shot and killed the three bears, and had been unsuccessful in their attempts to capture the bears. Substantial evidence introduced at trial established that these three bears were unlike previous bears the residents of Ferndale had encountered. Tim Manley, FWP's human-bear conflict specialist, confirmed that the bears had "lost wariness of being around people, [and] that they fel[t] comfortable around homes, around people." (ER at 27.) Multiple witnesses at trial

-4-

testified that this behavior made them more concerned about and fearful of these three bears than other bears that regularly passed through the neighborhood. (Doc. 63 at 12.)

The bears were at the Wallen residence at least four times on May 27. First, during the early hours of the morning, the bears gained access to the Wallen's chicken coop and killed several chickens. The bears returned around 6:30 in the evening, while the Wallen family and a friend of their teenage daughter were outside in the yard. The bears' arrival caused everyone except Wallen to retreat to the house. At this point, Wallen accessed his vehicle and used it to chase the bears from his property. The bears returned for a third time approximately 10 to 15 minutes later, and Wallen again hazed the bears from his property in his pick-up truck. When the bears had retreated, Wallen retrieved his .22 caliber rifle to escort his daughter's friend to his vehicle.

Wallen did not return to his house at this point but began removing the dead chickens the bears had previously killed from his yard. The remaining live chickens wandered freely about the yard and Wallen as he worked. During the time Wallen was cleaning up the yard, the first two bears returned. Wallen was surprised by the bears because their approach had been hidden by the garage. At

some point after these two bears entered the yard, Wallen shot at the bears with his rifle and the bears fled.

A short time later, as Wallen continued removing chicken carcasses from the yard, the third bear entered the yard from the same direction as the previous two. This bear's return was also blocked from Wallen's view by the garage, and Wallen was surprised by his arrival. The third bear's behavior may have been erratic and unpredictable, as noted by trial testimony from Wallen and his daughter. Wallen fired at this bear twice, and the bear retreated from the property. All three bears died from the wounds Wallen inflicted.

Prior to trial, Wallen was interviewed by or had conversations with law enforcement personnel three times concerning the events of May 27. Wallen also testified on his own behalf at trial. FWP Game Warden Charles Bartos first spoke with Wallen on May 27, shortly after Wallen shot the bears and one was discovered wounded by Wallen's neighbor. Warden Bartos returned the following day, May 28, 2014, when the second bear was discovered dead, and Wallen disclosed additional details about the evening of May 27 in this conversation. Finally, USFWS Special Agent Brian Lakes, with Warden Bartos accompanying him, interviewed Wallen on May 29, 2014.

While Wallen shot at all three bears on May 27, he only informed Warden Bartos that he shot at one bear in their first conversation and made no mention of the other two bears returning that night. Wallen stated that he shot at the bear one time while it was in the chicken coop and one time while it was walking away. Evidence from the necropsy of the bear retrieved the first night showed what appeared to be two bullet holes in the bear's left hind quarter, entering from the stomach area. This evidence is consistent with Wallen's statement to Warden Bartos on the evening of the incident. Warden Bartos recalled that during this first interview that Wallen stated he wanted to scare the bear away from his chickens.

The following day, after discovery of the second dead grizzly, Wallen informed Warden Bartos that he had shot at all three bears the previous night. In this conversation, Wallen stated that two bears appeared in his yard before the appearance of the lone bear and that they broke into his chicken coop and killed several chickens. Bartos testified at trial that Wallen told him he fired two shots at the bears and they ran off. The third bear's carcass was discovered approximately one week later on property immediately to the east of Wallen's.

On May 29, 2014, two days after the original incident, Wallen provided a more detailed description of his encounters with all three grizzlies to Agent Lakes. In this interview, Wallen claimed that the bears were not in the chicken coop when

he fired at them. However, he also stated that when he saw the first two bears they were approximately 40 yards from his position next to his truck. Additionally, Wallen told Agent Lakes that it was scary knowing that his family was outside when the bears went after the chickens. Wallen also signed an affidavit at this interview stating that he was fearful for himself and his family.

At trial, Wallen's testimony contained significant details not previously recounted to law enforcement or details that were inconsistent with his previous statements. Wallen claimed that he fired at the first two bears as they ran towards him from a distance of approximately 15 feet. He stated he was backpedaling towards the house as he fired these shots and that he fired the first shot immediately and the second shot 20 seconds later.

Wallen's daughter offered trial testimony contradicting Wallen on several points. Notably, Judge Lynch directly questioned Wallen's daughter about the time span between when the first two bears arrived in the yard and when she heard Wallen fire shots at them. Wallen's daughter responded that she did not recall hearing shots until "a minute or so" after she had run inside the house. This testimony is impossible to reconcile with Wallen's timeline of the same events.

## III. LEGAL STANDARDS

On appeal, Wallen claims there is not sufficient evidence in the record to support his conviction. An appeal based on the sufficiency of the evidence is reviewed de novo. *United States v. Chung*, 569 F.3d 815, 823 (9th Cir. 2011). The "critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). However, "this inquiry does not require the court to "'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* at 318–19 (quoting *Woodby v. INS*, 385 U.S. 276, 282 (1966) (emphasis in *Jackson*)). The determination that the evidence is "constitutionally sufficient" to support the defendant's conviction is "wholly unrelated to the question of how rationally the verdict has actually been reached." *Id.* at 319 n.13. "The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (citation omitted) (emphasis in original). Under this standard, the factfinder carries the full

"responsibility" to "fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.*

A "challenge to a conviction based on sufficiency of the evidence" requires this Court to undertake a "two-step" inquiry. *U.S. v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010). The first step in the analysis dictates that the "reviewing court must consider the evidence presented at trial in the light most favorable to the prosecution." *Id.* This step does not allow for the court of appeals to step into the role of factfinder and consider how it would have evaluated the evidence on the record. "Faced with a record of historical facts that supports conflicting inferences," a reviewing court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution and must defer to that resolution." *Jackson*, 443 U.S. at 326. "Second, after viewing the evidence in the light most favorable to the prosecution, the reviewing court must determine whether this evidence, so viewed, is adequate to allow '*any* rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt.'" *Nevils*, 598 F.3d at 1164 (quoting *Jackson*, 443 U.S. at 319) (emphasis in original).

## IV. DISCUSSION

The government carries the burden of proving four elements beyond a reasonable doubt to convict a defendant of knowingly killing a grizzly bear: "(1) the defendant knowingly killed a bear; (2) the bear was a grizzly; (3) the defendant did not have permission to kill the bear; and (4) the defendant did not act in self-defense or in defense of others." *Wallen* 874 F.3d at 627 (citing *United States v. Clavette*, 135 F.3d 1308, 1311 (9th Cir. 2018)). To establish that a defendant did not act in self-defense or defense of others, the government must prove beyond a reasonable doubt that the defendant did not have a subjective "good faith belief" that his actions were necessary to protect himself or others from "bodily harm" from a grizzly bear. 16 U.S.C. § 1540(b)(3).

Under this standard, a defendant claiming self-defense under 16 U.S.C. § 1540(b)(3) has a good faith state of mind when they act with "honesty in belief or purpose" that they or others are in danger of bodily harm from a grizzly bear. *Id.* at 629 (quoting *Good Faith, Black's Law Dictionary* (10th ed. 2014)). Therefore, for the record of conviction to survive Wallen's challenge, it must reflect sufficient evidence to allow *any* rational factfinder to conclude, beyond a reasonable doubt, that Wallen did not honestly believe that shooting the three

grizzly bears was necessary to protect himself, his family, or any other person from bodily harm.

The Ninth Circuit acknowledged that the reasonableness of a defendant's subjective state of mind is reflected directly by his sincerity and that, while the inquiry is subjective, "the objective reasonableness (or unreasonableness) of a claimed belief bears directly on whether that belief was held in good faith." *Wallen*, 874 F.3d at 632. The Ninth Circuit outlined several objective factors that are traditionally evaluated in self-defense claims for the factfinder to consider when determining whether the defendant's actions were reasonable and in good faith. These factors are: 1) the immediacy of the threat; 2) whether the defendant provoked the conflict; and 3) the amount of force used by the defendant. *Id.* Predicting the difficulty of determining a defendant's subjective state of mind, the Ninth Circuit warned that "'in weighing the credibility of the claim,'" the factfinder "'may not substitute its own determination of objective reasonableness . . . [for] what the defendant subjectively believed.'" *Id.* (quoting *United States v. Powell*, 955 F.2d 1206, 1212 (9th Cir. 1991)).

The Court finds that the threat to Wallen and any family present during the encounters was likely immediate, that Wallen did not provoke the conflict with the bears, and that the amount of force Wallen used is not determinative in this case.

The immediacy of threat is borne out by the fact that all three bears reappeared at the Wallen residence unexpectedly. Moreover, Wallen was surprised by the bears' reappearance. Nor is there anything in the record that would lead this Court to the conclusion that Wallen provoked his confrontations with the bears. Wallen was already in his yard when the bears returned and there is no indication that Wallen went looking for the bears. Lastly, Wallen fired at the bears with a .22 caliber rifle that was in extremely poor shape. Though deadly in this instance, a .22 caliber rifle is generally not considered to be an adequate caliber to kill a grizzly. Accordingly, the Court finds this use of force was not excessive.

Despite this, the Ninth Circuit's self-defense factors are not the only relevant evidence this Court must examine to determine if the conviction stands. The Court must also weigh Judge Lynch's determination that Wallen's testimony was not credible, which was the primary basis for his conviction. When remanding the case, the Ninth Circuit was clear that "[i]n assessing the credibility of Wallen's claimed belief that shooting the bears was necessary, the magistrate judge may consider *any evidence* that it would have been *unreasonable* to believe the bears posed a danger to Wallen or his family." *Wallen*, 874 F.3d at 634 (emphasis added). When reviewing Judge Lynch's credibility determination, the Court "must respect the exclusive province of the fact finder to determine the credibility of the

witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts." *U.S. v. Hubbard*, 96 F.3d 1223, 1226 (9th Cir. 1996). The Court cannot set aside Judge Lynch's determination that Wallen lacked credibility unless it finds that this finding of fact was "clearly erroneous." *Anderson v. City of Bessemer City, N.C.* 470 U.S. 564, 573 (1985). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948). Reviewing courts are cautioned against reversing the lower court "simply because it is convinced it would have decided the case differently." *Anderson*, 470 U.S. at 573.

The Court acknowledges that a defendant might make "false statements to law enforcement for any number of reasons" and that it is the factfinder's duty to make reasonable inferences as to why a defendant may have made those false statements. *Juan H. v. Allen*, 408 F.3d 1262, 1277 (9th Cir. 2005). A "reasonable inference is one that is supported by a chain of logic, rather than . . . mere speculation dressed up in the guise of evidence." *Id.*

The Court finds that a rational factfinder could make a reasonable inference that Wallen's lack of truthfulness with law enforcement as to material facts and his stated purpose for his actions relates directly to the question of whether his claim

of a subjective good faith belief in self-defense was credible. The issue before Judge Lynch was not whether Wallen was afraid of the bears or shaken by his encounters with the bears—as the record clearly reflects that he was reasonably fearful. The issue before Judge Lynch was whether Wallen fired his rifle at the bears believing, in good faith, that he was protecting himself or his family from bodily harm.

Wallen's first interview with law enforcement occurred immediately after he shot at the bears and, as noted by Judge Lynch, this interview contained material omissions. Namely, that there were three bears and that Wallen had fired directly at all three. During this interview, Wallen claimed only that he shot at a lone bear so as to scare it away from his chickens. At trial, Warden Bartos recounted that, on the evening of the incident, Wallen informed him that the bear "was in his chicken coop, [i]t was tearing up the chicken and eating the chickens, and he was scaring it away." (ER at 41.) The Court finds it significant that Wallen did not mention fearing for the safety of his family or himself on the night of the incident.

Wallen's subsequent interviews with law enforcement both alter and add material facts that are more compatible with a claim of self-defense under the ESA. However, the reasons Wallen gave for firing at the grizzlies on the night of the incident were likely the most reliable, and these statements show that he shot at the bears to protect his remaining chickens or to scare the bears from his property.

Wallen did not mention fearing for his safety or the safety of his family until two days after the incident when he wrote and signed an affidavit claiming he feared for himself and his family. Wallen's trial testimony included even more facts. At trial, Wallen paints the arrival of the first two bears as a more immediate threat than before, which required him to fire at them almost instantaneously. This rendition is not consistent with his prior conversation with Agent Lakes or his daughter's testimony at trial.

The material omissions in his first interview and the subsequent alteration of material details in succeeding interviews and at trial demonstrate Wallen's willingness to be disingenuous with law enforcement and the Court. Under this evidence, the Court concludes that Judge Lynch's inferences were rational, supported by a chain of logic from evidence in the record, and not based in mere speculation.

The Court finds that Judge Lynch's finding on Wallen's credibility and its ultimate influence on his conclusion was not clearly erroneous. After viewing all the evidence in the record in a light most favorable to the prosecution, the Court finds that any rational trier of fact could have found that the prosecution proved beyond a reasonable doubt that Wallen did not have the requisite subjective good faith belief to claim self-defense under the ESA. So finding, the evidence in the

record was sufficient to support Wallen's conviction. Judge Lynch's pronounced judgment and sentence are AFFIRMED.

DATED this 25th day of April, 2019.

Dana L. Christensen, Chief Judge
United States District Court